BOB SPEARS v. THE STATE.

No. 6296.    Decided June 8, 1921.

**1.—Keeping Disorderly House—Assignation House—Sufficiency of the Evidence.**

Where, upon trial of keeping a disorderly house, the evidence was sufficient to sustain the conviction, there was no reversible error.

**2.—Same—Statutes Construed—Assignation House—Disorderly House.**

If there be mutual appointment between the parties to the sexual intercourse, or an appointment made without such mutuality by another party, and such appointment be fo- the purpose of sexual intercourse, the place of such intercourse will become legally an assignation house and hence a disorderly house, no matter if it be a house, room, or simply a place, Following Stokeley v. State, 37 Texas Crim. Rep., 638.

**3.—Same—Definition of Offense—Sufficiency of the Evidence.**

Under the Statute, if the proof show that defendant directly, or for another, kept, or was concerned in keeping, or aided or assisted, or abetted the persons who did keep said house by making appointments with men for the purpose of sexual intercourse with the women in said house, he would, be guilty as charged; and where the evidence showed that the defendant was guilty under this construction of the statute, the conviction was sustained.

Appeal from the County Court of Howard. Tried below before the Honorable James T. Brooks.

Appeal from a conviction of keeping a disorderly house; penalty, a fine of $200, and twenty days in the county jail.

The opinion states the case.

*Littler & Debenport,* for appellant.—Cited Juaraqui v. State, 28 Texas, 625; State v. Powell, 28 id., 627.

On question of insufficiency of evidence: Riley v. State, 125 S. W. Rep., 583; Smith v. State, 162 id., 835.

*R. H. Hamilton,* Assistant Attorney General, for the State.

LATTIMORE, Judge.—Appellant was convicted in the County Court of Howard County of a misdemeanor, and his punishment fixed at a fine of $200 and confinement in the county jail for twenty days.

The indictment contained three counts. The court submitted only the first and third. The jury found appellant not guilty under the first count, but convicted him under the third, which reads as follows: "And the Grand Jurors aforesaid, upon their oaths aforesaid, do further present in and to said court that Bob Spears, on or about the 4th day of December, A. D. 1920, and anterior to the presentment of this indictment, in the County of Howard and State of Texas, did unlawfully keep and was then and there unlawfully concerned in keeping and did then and there unlawfully aid and assist and abet in keeping a disorderly house in a house there situate, the said house then and there being an assignation house and then and there being a house, room, and place where men and women did then and there meet by mutual appointment and by appointment made by another for the purpose of unlawful sexual intercourse, against the peace and dignity of the State."

The only errors urged are those alleged to have been committed by the trial court overruling appellant's motion for new trial, it being insisted that there was no evidence showing that an assignation house ran in Howard County about the date alleged, and that no evidence showed that this appellant kept or was concerned in keeping, or aided, assisted or abetted in the keeping of such house in said county.

The facts substantially showed that in December, 1920, about a mile East of the town of Big Springs in Howard County, stood a scantily furnished two-room house belonging to a man nàmed Ellis, there being a bed in one of said rooms and a pallet of some kind in the other. On Saturday night about three weeks before Christmas, 1920, two women were seen in Horn's restaurant in Big Springs. They left and went around a back street. Just after they left, appellant, who was the proprietor of a number of service cars, got into a Ford touring car, drove around the same way the women went, and witness Davis said that he saw the women get into the car with appellant and drive away. In a little while appellant came back, and Davis asked him if he had some women out, and appellant said yes, and asked Davis if he wanted to go out. Davis told him he did, and was informed by appellant where to go in order to be taken out. Davis went to the place named by appellant and found there other young men waiting. Pres-

ently appellant came up in a Ford sedan and took the party out to the said house where they found two women, one in one room and the other in the other. Davis testified that he thought these to be the same women whom he had seen go out of Horn's restaurant. Various members of the party of young men testified to having intercourse with said women. Soon after their party was carried to the premises, appellant left and presently came back with other young men, among whom was one named Digsby. Davis testified that appellant later during said night carried him out to said place again, and he again had intercourse with one of said women. All of the young men testified that they paid appellant one dollar each and paid the women four dollars each. Two other young men testified that on what appears to have been the same night, appellant approached them with an invitation to step out and see some women, which they declined. The son of Mr. Ellis, testified that he looked after said house for his father, and that while he would not swear that appellant did not use said house on the occasion mentioned, nor that the two women were not out there. if such was the case, it was without his knowledge or authority. These facts are stated that our conclusions may be understood. Appellant did not testify.

Under Article 361 of our Penal Code, prior to its amendment in 1907, the question of whether the accused was a lessee or tenant within legal definitions, often arose in disorderly house cases. Bates v. State, 45 Texas Crim. Rep., 420, 76 S. W. Rep., 462, cited and relied on by appellant, was decided under said former law, and reversed because it was not shown that appellant was a tenant. This question is not a factor in a prosecution such as the one now before the court. By the terms of the law as it now is, one definition of a disorderly house is "Any assignation house." An assignation house is now defined by statute as "A house, room or place, where men and women meet by mutual appointment or by appointment made by another for the purpose of sexual intercourse." We thus see if there be mutual appointment between the parties to the sexual intercourse, or an appointment made without such mutuality, by another party, and such appointment be for the purpose of sexual intercourse, the place of such intercourse will become legally as assignation house,—and hence a disorderly house,—no matter if it be a house, a room, or simply a place. In Stokely v. State, 37 Texas Crim. Rep., 638, an opinion by Judge DAVIDSON, we held that a temporary use of premises for prostitution might make of same a disorderly house. The evidence in that case showed such use to extend only to a part of one night. In the instant case no question seems raised of the fact that for a part of one night a certain house in or near the town of Big Springs, was used by two prostitutes as a place for plying their vocation, and that on said night they there met a number of men and engaged with them in sexual intercourse, each and all of said men being carried to said place by appellant. Said house being thus used for such purpose, was

in legal phraseology kept therefor, either by said women or some other person, and the question as to who was the keeper of said house at said time, if some one other than appellant, is of no concern in the disposition of this case. Under the statute if the proof shows that appellant directly or for another kept, or was concerned in keeping, or aided, or assisted or abetted the persons who did keep said house, by making appointments with men for the purpose of sexual intercourse with the women in said house, he would be guilty as charged. That appellant carried said women to said house seems a fair inference, but irrespective of this, he knew they were there, and knew their purpose. This conclusion cannot be escaped. He carried the automobile load of young men, among whom was Davis, and each of whom says he did not know where he was going, out to the place where the women were, left them and went away, and came back presently with another load, and tried to get others to go who refused to accept his invitation. He received a dollar each from those who did accompany him.

Webster's International Dictionary gives, among its definitions of the word appointment, the following: "Stipulation; agreement; the act of fixing by mutual agreement. Hence,—arrangement for a meeting; engagement." Among synonyms of the word appointment is given the word, direction. Applying these definitions, it appears that under the undisputed facts of the instant case it would be multiplying words uselessly to argue that appellant did not arrange the meeting of these young men with said prostitutes; did not direct said meeting. That his was the mind and hand that brought them together for the purpose forbidden, at the time and place they did so meet, seems an irresistible conclusion, as is the further fact that in so doing he aided, assisted and abetted in the keeping of such house as a disorderly house.

Being unable to arrive at any other conclusion, and there being no question in the case except the sufficiency of the evidence, the judgment of the trial court is affirmed.

*Affirmed.*